The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 12, 2018

## 2018COA98

**No. 17CA1153, People in the Interest of D.C.C. — Juvenile
Court — Jurisdiction — Dependency and Neglect — Uniform
Parentage Act**

A division of the Court of Appeals holds that when a court

declares a child dependent or neglected in a dependency and

neglect case filed under article 3 of the Children's Code, a court

presiding over a separate parentage proceeding under article 4 of

the Code (The Uniform Parentage Act) loses jurisdiction to

determine that child's parentage.  In such a situation, all matters

pertaining to the child's status must be addressed in the open

dependency and neglect case.  Because the article 4 court in this

case lacked jurisdiction to determine that the respondent was not

the child's father, the article 3 dependency and neglect court erred

in relying on the article 4 court's order so finding in dismissing

respondent from the dependency and neglect case.

COLORADO COURT OF APPEALS         **2018COA98**

Court of Appeals No. 17CA1153
Weld County District Court No. 16JV505
Honorable Elizabeth B. Strobel, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of D.C.C., D.I.C., and D.R-B., Children,

and Concerning A.M.G., a/k/a A.M.G-N.,

Respondent-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE J. JONES
Ashby and Harris, JJ., concur

Announced July 12, 2018

No Appearance for Petitioner-Appellee

Meghan E. Scott, Guardian Ad Litem

Pamela K. Streng, Georgetown, Colorado, for Respondent-Appellant

¶ 1    In this dependency and neglect proceeding, A.M.G. (father) appeals the order dismissing him from the petition in dependency or neglect after a child support court declared he wasn't the father of D.R-B. (child).  We conclude that the child support court lacked jurisdiction to make paternity findings when there was an ongoing dependency and neglect proceeding.  So we reverse the order dismissing father from the petition.

## I.  Background

¶ 2    In July 2016, the Weld County Department of Human Services (Department) filed a petition in dependency or neglect and for a determination of paternity.  It alleged that J.R-B. (mother) and K.R-B. (stepmother) had a history of methamphetamine abuse and domestic violence, and had been in and out of jail.

¶ 3    The petition named A.M.G. as the father of the child, and it advised him that paternity of the child might be determined in the action pursuant to the Uniform Parentage Act (UPA), sections 19-4-101 to -130, C.R.S. 2017.  No one disputed that A.M.G. was the child's biological father.  The court didn't decide paternity at the shelter hearing.

¶ 4    Before the filing of the dependency and neglect proceeding, stepmother had filed a motion for an allocation of parental responsibilities over the child in a domestic relations court. The court ordered father to complete genetic testing in that case, but father didn't get tested before the Department filed the dependency and neglect case. The domestic relations court then certified the issues of legal custody and parental rights and responsibilities to the dependency and neglect court. *See* § 19-1-104(4)(a), C.R.S. 2017.

¶ 5    Father was served with the petition in dependency or neglect on August 1, 2016. After he failed to appear at his adjudicatory hearing on August 18, 2016, the district court entered a default decree adjudicating the child dependent or neglected.

¶ 6    Father appeared for the first time at a hearing on February 2, 2017, and the court appointed counsel. The court also ordered father to participate in and cooperate with genetic testing. Mother's attorney indicated to the court that genetic testing had already been scheduled for February 15, 2017, and that the child support enforcement office had requested the paternity testing. Father indicated that he hadn't been served with an order for genetic

testing and that he was then hearing about it for the first time. The court told father that he would receive an order requiring him to show up for the test. The court issued a written order that same day.

¶ 7     A review of the register of actions shows that the Weld County Child Support Services Unit filed a petition for support in another division of the juvenile court on November 18, 2016, and that father was served on November 26, 2016. The register of actions also shows that father failed to appear at a hearing in the child support case on January 17, 2017, and that on that date the court ordered father to appear for genetic testing on February 15, 2017. It appears undisputed that father wasn't ever tested.

¶ 8     At a review hearing on April 4, 2017, the dependency and neglect court informed the parties that, in the child support case, the magistrate had entered an order finding that father wasn't a legal parent of the child and "therefore, has no parental rights concerning custody and visitation." The child support court declared stepmother to be the child's legal parent. The dependency and neglect court said, "I don't know that the Magistrate can do that with a [dependency and neglect case]. And I think what he was

3

trying to do was establish child support. However, nobody appealed this." The dependency and neglect court also said, "[I]'ll leave it to you folks and all your great minds to sort this out."

¶ 9 The dependency and neglect court provided copies of the order from the child support court. That order said,

> [A.M.G.] has been properly served and notified of the hearing today. Nevertheless, he failed to appear or otherwise respond to this matter. [A.M.G.] had an opportunity for genetic testing and failed to appear. [Stepmother] wished to be declared the legal parent of the child. She has legal standing to do so. Based on the testimony presented and the provisions of 19-4-105 the Court finds [stepmother] to be the legal parent of the child. She shall be added to the birth certificate of the child.

¶ 10 At a review hearing on June 7, 2017, the dependency and neglect court determined that the child support court's parentage order was final because no one had sought review. The dependency and neglect court also found that stepmother was the child's parent, and "that being the case, then [A.M.G.] is dismissed from this case as the father."

¶ 11 Father contends that the dependency and neglect court erroneously relied on the order from the child support court finding that he wasn't the child's legal father. He argues that after the

4

dependency and neglect court adjudicated the child, that court maintained exclusive, continuing jurisdiction over the child until the case was closed or the child reached the age of twenty-one. *See* § 19-3-205(1), C.R.S. 2017. We agree with father that, under the Children's Code, the dependency and neglect court maintains continuing, exclusive jurisdiction over decisions related to the status of a child who has been adjudicated dependent or neglected. As a result, we conclude that the dependency and neglect court erred in dismissing father from the petition based on parentage findings made by the child support court.[1]

## II. Statutory Construction and Standard of Review

¶ 12 We review questions of statutory interpretation de novo. *People in Interest of C.L.S.*, 313 P.3d 662, 665-66 (Colo. App. 2011). In construing a statute, we strive to give effect to the legislature's intent, and adopt the construction that best carries out the

---

[1] The guardian ad litem argues that father waived any challenge to the child support court's jurisdiction by failing to appeal the magistrate's order in the child support case. But father challenges the dependency and neglect court's order. And, in any event, we're satisfied that the conditions for collaterally attacking the subject matter jurisdiction of another court are present in this case. *See People in Interest of E.E.A. v. J.M.*, 854 P.2d 1346, 1351 (Colo. App. 1992).

statute's provisions and purposes. We won't construe it in a manner that leads to an absurd or unreasonable result. *Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 889 (Colo. 2011). As well, "[w]e construe statutes related to the same subject matter alongside one another, with the goal of giving consistent, harmonious, and sensible effect to all of their parts." *Kinder Morgan CO2 Co. v. Montezuma Cty. Bd. of Comm'rs*, 2017 CO 72, ¶ 24.

### III. The Dependency and Neglect Court Maintains Continuing, Exclusive Jurisdiction Over a Child Adjudicated Dependent or Neglected

#### A. Overview of the Children's Code

¶ 13    The General Assembly has declared that the purposes of the Children's Code (Code), in general, include (1) securing for each child subject to the Code "such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society"; (2) preserving and strengthening family ties whenever possible, including improving the home environment; (3) removing children from the parents' custody only when their welfare and safety or the public's safety would otherwise be endangered; and (4) securing for any child removed from his parents' custody "the necessary care, guidance, and discipline to assist him in becoming

6

a responsible and productive member of society." § 19-1-102(1), C.R.S. 2017.

¶ 14     Within the Code, articles 3 and 4 have different purposes. Article 3 addresses dependency and neglect proceedings. *See* §§ 19-3-100.5 to -805, C.R.S. 2017. In its legislative declaration, article 3 says that "the stability and preservation of the families of this state and the safety and protection of children are matters of statewide concern." § 19-3-100.5(1). To that end, the state must "make a commitment to make 'reasonable efforts' to prevent the placement of abused and neglected children out of the home and to reunify the family whenever appropriate." *Id.* The Code sets forth a number of procedures aimed at protecting children from emotional and physical harm while seeking to repair and maintain family ties. *L.L. v. People*, 10 P.3d 1271, 1275 (Colo. 2000).

¶ 15     Article 4 covers parentage proceedings, which are governed by Colorado's version of the UPA. *See* §§ 19-4-101 to -130. Although there's no legislative declaration included in the article, "[o]ne basic purpose of the UPA is the establishment of the parent-child relationship, and another is the protection of that relationship." *R.McG. v. J.W.*, 615 P.2d 666, 669 (Colo. 1980) (citations omitted).

7

¶ 16    Under the Code, the juvenile court has exclusive, original jurisdiction in both dependency and neglect proceedings and proceedings to determine parentage. § 19-1-104(1)(b), (f). The question before us, however, is whether two juvenile courts can simultaneously exercise jurisdiction over a child who's been adjudicated dependent or neglected. For the reasons discussed below, we conclude that they can't, and hold, as has another division of this court in a slightly different context, that when a child has been adjudicated dependent or neglected, all matters related to the child's status must be addressed in the open dependency and neglect case. *See People in Interest of E.M.*, 2016 COA 38M, ¶ 24, *aff'd sub nom. People in Interest of L.M.*, 2018 CO 34.[2]

## B. Exclusive, Original Jurisdiction

¶ 17    We adhere to the well-established rule that where specific and general statutes conflict, the specific statute prevails. *State, Motor*

---

[2] This isn't to say, however, that the dependency and neglect court can't rely on genetic testing performed in connection with a paternity, domestic relations, or other case. It may do so, in its discretion, if relevant to matters pending in the dependency and neglect case.

*Vehicle Div. v. Dayhoff*, 199 Colo. 363, 365, 609 P.2d 119, 121 (1980).

¶ 18    Although subsections 19-1-104(1)(b) and (f) give the juvenile court exclusive jurisdiction in (1) proceedings over any child who is dependent or neglected and (2) proceedings to determine parentage, section 19-3-205(1) says that "*[e]xcept as otherwise provided in this article,* the jurisdiction of the court over any child adjudicated as neglected or dependent shall continue until he becomes twenty-one years of age unless earlier terminated by court order."  (Emphasis added.)  There isn't any provision in article 3 conferring authority to another court to hear matters of parentage once a court has adjudicated a child dependent or neglected.

¶ 19    Further, the continuing, exclusive jurisdiction of the dependency and neglect court is specifically recognized in the jurisdictional statutes of the Code.  Section 19-1-104(4)(a) says that "[i]f a petition involving the same child is pending in juvenile court or if continuing jurisdiction has been previously acquired by the juvenile court, the district court shall certify the question of legal custody to the juvenile court[.]"  Likewise,

> [a]ny party to a dependency or neglect action who becomes aware of any other proceeding in which the custody of a subject child is at issue shall file in such other proceeding a notice that an action is pending in juvenile court together with a request that such other court certify the issue of legal custody to the juvenile court pursuant to Section 19-1-104(4) and (5), C.R.S.

C.R.J.P. 4.4(a). As our supreme court recently held, "these statutes and rules amply demonstrate the legislature's preference for deciding the fate of parents who are involved in dependency and neglect proceedings under Article 3." *L.M.*, ¶ 38 (when a dependency and neglect proceeding is pending, the state can terminate parental rights only through the procedures set forth in article 3 and not under article 5).

¶ 20    Reading these statutes together, we conclude that the juvenile court presiding over the open dependency or neglect case maintains continuing, exclusive jurisdiction over the status of an adjudicated child. *See E.M.*, ¶¶ 20, 24.

## C.  Due Process

¶ 21    Parents "have a fundamental liberty interest in the care, custody, and control of their children." *In re D.I.S.*, 249 P.3d 775, 780 (Colo. 2011); *accord Troxel v. Granville*, 530 U.S. 57, 65 (2000).

When a court decision will effectively eliminate or weaken familial bonds by terminating parental rights, or denying custody, parents must first receive fundamentally fair procedures. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *D.I.S.*, 249 P.3d at 781-82.

¶ 22    In this case, when the child support court determined that A.M.G. wasn't the child's father and "therefore has no parental rights including custody and visitation," the court effectively terminated his parental rights. The court did so without providing him the due process protections that he was being afforded in the open dependency and neglect proceeding.

¶ 23    Parents in dependency and neglect proceedings receive several procedural and substantive protections that aren't available under the UPA. In a dependency and neglect proceeding, for example, a parent has the statutory right to be represented by counsel at every stage of the proceeding and may apply for court-appointed counsel if the parent qualifies financially. § 19-3-202(1), C.R.S. 2017. A parent in a proceeding under article 4 doesn't have a statutory right to be represented by counsel or to apply for court-appointed counsel.

¶ 24　　In addition, in parentage cases, "the goal of the proceeding is to determine whether a man is a child's legal parent." *C.L.S.*, 313 P.3d at 670. In dependency and neglect proceedings, by contrast, the goal is to stabilize and preserve families and ensure children's safety. *See* § 19-3-100.5(1). Due process in dependency and neglect proceedings dictates that parents named in the petition be provided an opportunity to become rehabilitated through participation in a treatment plan. *See* § 19-3-604, C.R.S. 2017; *A.M. v. A.C.*, 2013 CO 16, ¶ 29. Thus, after a court adjudicates a child dependent or neglected, the court then holds a dispositional hearing in which it adopts a treatment plan for the parents if it's possible to do so. § 19-3-507, C.R.S. 2017. The purposes of the treatment plan are to provide services to the family, prevent unnecessary out-of-home placement of the child, and facilitate reunification of the child and family. § 19-3-507(1)(b).

¶ 25　　Such rehabilitative and reunification efforts aren't available in parentage proceedings. In an article 4 proceeding, the only protections provided an alleged parent are (1) that each man alleged to be the natural father must be made a party to the paternity action, or, if not subject to the personal jurisdiction of the court,

12

must be given notice of the action and an opportunity to be heard, § 19-4-110, C.R.S. 2017; *People in Interest of J.G.C.*, 2013 COA 171, ¶ 12; and (2) that genetic testing must be ordered on request, § 19-4-112, C.R.S. 2017.

¶ 26 We conclude that there isn't any substitute in article 4 proceedings for the protections afforded a parent under article 3.[3] A parent is thus denied fundamentally fair procedures in actions under article 4 when there's an open dependency and neglect case.

## IV. UPA Compliance

¶ 27 Father also contends that when a paternity issue arises in a non-paternity proceeding, the UPA must be followed or the court lacks subject matter jurisdiction. From what we can discern, father argues that the juvenile court didn't properly comply with the UPA. Because we hold that the child support court lacked jurisdiction to make parentage findings and we remand the case, we needn't address this argument.

---

[3] As discussed in footnote 2 above, however, a dependency and neglect court may use genetic testing results obtained in an article 4 case.

## V. Conclusion

¶ 28    The order dismissing father from the petition in dependency or neglect is reversed.  We remand the case to the trial court to make findings consistent with this opinion.

JUDGE ASHBY and JUDGE HARRIS concur.