The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 29, 2019

## 2019COA136

**No. 18CA1164, *Peo in Interest of TMS* — Juvenile Court —
Dependency and Neglect — Appointment of Guardian Ad Litem
— Impaired Adult**

A division of the court of appeals considers whether a
guardian ad litem (GAL) for a parent with an intellectual disability
may properly advocate against the parent's goal of reunification.
The division concludes that termination of a parent's parental rights
over the parent's objection is not in the parent's best interests.  As a
result, the juvenile court erred when it denied a parent's motion to
remove her GAL after the GAL advocated for positions that
undermined the parent's goal of reunification over the parent's
objections.  The juvenile court also erred when it allowed the GAL to
give closing argument at the termination hearing because, unlike a
child's GAL, a parent's GAL may not participate as a party in

dependency or neglect proceedings.  Nonetheless, the juvenile court's errors were harmless beyond a reasonable doubt because (1) ample evidence supported the judgment of termination and (2) the juvenile court stated that it did not rely on the GAL's improper argument.

The division concludes the juvenile court properly denied the parent's motions for a continuance because the parent failed to show good cause for a delay or that a delay would serve the child's best interests.

The division also considers the parent's claims of ineffective assistance of counsel by her two trial attorneys.  Based on its determination that the GAL's improper advocacy was harmless, the division declines to consider the parent's assertion that her first attorney rendered ineffective assistance by requesting the appointment of the GAL and allowing the GAL to advocate against the parent's interests.  The division rejects the parent's claim as to her second attorney because the parent does not explain how the attorney's allegedly deficient performance prejudiced her.

Court of Appeals No. 18CA1164
City and County of Denver Juvenile Court No. 17JV542
Honorable Laurie A. Clark, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of T.M.S., a Child,

and Concerning S.A.S.,

Respondent-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE ROMÁN
J. Jones and Lipinsky, JJ., concur

Announced August 29, 2019

Kristin M. Bronson, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee

Josi McCauley, Guardian Ad Litem

The Noble Law Firm, LLC, Antony Noble, Lakewood, Colorado, for Respondent-Appellant

¶ 1    Mother, S.A.S., appeals the juvenile court's judgment terminating her parent-child relationship with her child, T.M.S. We are asked to decide what happens in a dependency and neglect proceeding when the parent's guardian ad litem (GAL) presents argument and testimony against the parent's interest and over the parent's objection. We conclude that the juvenile court erred in not granting the parent's motion to remove the GAL and in permitting the GAL's adverse closing argument. Nonetheless, under the circumstances of this case, we further conclude that these errors were harmless and, therefore, affirm.

## I.    Background

¶ 2    Mother has an intellectual disability. Shortly after the child was born, hospital staff contacted the Denver Department of Human Services to report that mother's low functioning impairs her ability to provide proper care for the child. The Department filed a petition in dependency or neglect citing concerns that mother's inability to recognize the child's basic needs, such as for feeding, diapering, and swaddling, places him at risk of harm. The juvenile court placed the child in a foster home when he was released from the hospital, and he remained there throughout the proceeding.

1

¶ 3    The juvenile court adjudicated the child dependent or neglected and adopted a treatment plan for mother.  One year later, the juvenile court held a three-day evidentiary hearing and terminated mother's parental rights.  The child's father confessed the motion to terminate his parental rights.

## II.    Analysis

### A.    Mother's GAL

¶ 4    Mother contends that the juvenile court erred when it denied her motion to remove her GAL and allowed the GAL to give closing argument supporting the termination of her parental rights.  We agree that the court erred.  But, under the circumstances, we conclude that the error was harmless.

#### 1.    The Role of a Parent's GAL Is to Assist the Parent and Protect the Parent's Best Interests

¶ 5    A juvenile court may appoint a GAL for a respondent parent who has an intellectual or developmental disability. § 19-1-111(2)(c), C.R.S. 2018.  Under the Children's Code, "guardian ad litem" means a person appointed by a court "to act in the best interests of the person whom the [GAL] is representing." § 19-1-103(59), C.R.S. 2018.  A GAL must comply with the chief

justice directives (CJD) and other practice standards incorporated by reference into the GAL statute.  § 19-1-111(6).  An attorney who is appointed as a GAL is subject to all of the rules and standards of the legal profession.  *See* Chief Justice Directive 04-05, Appointment and Payment Procedures for Court-appointed Counsel, Guardians *ad litem*, Child and Family Investigators, and Court Visitors paid by the Judicial Department, § VI(A) (amended July 2018).

¶ 6    The legislature has recognized that the differences between the respective disabilities and legal incapacities of children and mentally disabled adults require separate standards regarding the appointment, duties, and rights of a GAL for these categories of persons.  *See People in Interest of M.M.*, 726 P.2d 1108, 1117 (Colo. 1986).  For example, a juvenile court must appoint a GAL for the child in a dependency or neglect proceeding but has discretion whether to appoint a GAL for a respondent parent who has an intellectual or developmental disability.  § 19-1-111(1), (2)(c).  The child's GAL has a statutory right to participate as a party in dependency or neglect proceedings, but a parent's GAL does not. § 19-1-111(3); *cf. People in Interest of A.R.W.*, 903 P.2d 10, 12 (Colo.

3

App. 1994) (in contrast to role of child's GAL in dependency and neglect proceedings or dissolution of marriage actions, GAL for child in paternity action is neither a party nor counsel for the child and has no right to control the proceedings, defend the action, or appeal). Section 19-3-203(3), C.R.S. 2018, defines the duties of the child's GAL, which include making recommendations to the court concerning the child's welfare. Conversely, no statute authorizes the parent's GAL to make recommendations to the court concerning the parent's welfare.

¶ 7 Juvenile courts must "ensure that guardians *ad litem . . .* involved with cases under their jurisdiction are representing the best interests of . . . impaired adults." CJD 04-05, § VIII(B).

¶ 8 To be sure, a respondent parent, the parent's counsel, and the parent's GAL have distinct roles and responsibilities in a dependency or neglect proceeding. "While it is the [parent's counsel's] duty to provide the parent with legal advice on such decisions as whether to contest the termination motion and whether to present particular defenses to the motion, it is the role and responsibility of the parent to make those decisions." *M.M.*, 726 P.2d at 1120.

4

¶ 9      Unlike the parent or parent's counsel, the GAL does not participate as a party or a party's advocate in dependency or neglect proceedings. *Cf.* § 19-1-111(3); *A.R.W.*, 903 P.2d at 12. Instead, the GAL has an assistive role: to facilitate communication between the parent and counsel and help the parent participate in the proceeding. A juvenile court must appoint a GAL for a parent who "lacks the intellectual capacity to communicate with counsel or is mentally or emotionally incapable of weighing the advice of counsel on the particular course to pursue in her own interest." *M.M.*, 726 P.2d at 1120. But a "client who is making decisions that [a] lawyer considers to be ill-considered is not necessarily unable to act in his [or her] own interest." So if

> a parent, although mentally disabled to some degree, understands the nature and significance of the proceeding, is able to make decisions in her own behalf, and has the ability to communicate with and act on the advice of counsel, then a court might [properly] conclude . . . that a guardian ad litem could provide little, if any, service to the parent that would not be forthcoming from counsel.

*Id.*

## 2. The Juvenile Court Erred When It Denied Mother's Motion to Remove Her GAL

¶ 10    Decisions regarding the appointment of a GAL for a parent lie within the discretion of the juvenile court. *People in Interest of L.A.C.*, 97 P.3d 363, 366 (Colo. App. 2004). A court abuses its discretion when its ruling rests on a misunderstanding or misapplication of the law. *Sinclair Transp. Co. v. Sandberg*, 2014 COA 75M, ¶ 26.

¶ 11    Mother was represented by two different attorneys during the proceeding below. Mother's first attorney requested the appointment of a GAL for mother at the temporary custody hearing. She gave no reason for the request. The magistrate granted the request "based on the information contained in the [dependency or neglect] petition."

¶ 12    Mother's first attorney withdrew nine months later. At the next hearing, mother's second attorney asked the juvenile court to replace mother's GAL, asserting that mother's GAL was acting outside her role as GAL by advocating against mother's goal of reunifying with the child. She also said that mother's relationship with the GAL had broken down to the point that the GAL could no

6

longer fulfill her role. The juvenile court described its understanding of the GAL's role as follows:

> [Mother] doesn't get to dictate what [her GAL] does just like the child doesn't get to dictate what [his GAL] does.
>
> . . . .
>
> [Mother's GAL] can advocate differently [from mother's goals] if she believes that . . . such advocating would not be in her client's best interest, meaning that it could put [mother] at criminal negligence [sic] for child abuse because [mother] doesn't have the ability to do so, she absolutely should not be advocating for that. As matter of fact they [sic] would be against her role to do so. No different than if a [GAL were] representing a teenager, who said they wanted a return home, and [the GAL] believed that was not appropriate.
>
> . . . .
>
> So [mother's GAL] has a du[a]l role. One role is to help [mother] understand the information that's being provided, and, secondly, to advocate . . . for . . . what that [GAL] believes is in the best interest of the adult, not what the adult wants, not what the adult believes is best, but what the [GAL] believes is best. And so if [mother] wants me to sift through all the professionals to find one that's going to agree with her, that's not happening.

¶ 13 Mother then filed a written motion to dismiss the GAL. She asserted the following grounds for dismissal:

(1) *The GAL had improperly advocated for positions adverse to mother's fundamental right to raise her child.* The GAL had requested a reduction of parenting time and supported a concurrent permanency goal of adoption over mother's objection.

(2) *The GAL was ineffective in her role.* Mother had difficulty understanding the GAL because the GAL did not use simple language or make other accommodations when presenting information. The GAL's relationship with mother was so contentious that mother refused to meet with the GAL alone or to include the GAL in meetings with mother's attorney.

(3) *Mother did not need a GAL because she was able to understand the proceedings and assist her attorney without one.* Mother's attorney was able to communicate with her effectively. When necessary, mother's attorney employed other protections to support mother, such as enlisting trusted family and kin.

¶ 14 Mother's GAL filed a response to the motion, which the juvenile court accepted and cited in its order. We note, however,

8

that mother's GAL lacked standing to file a response to mother's motion because she was not a party to the dependency or neglect proceeding. *Cf. Hollingsworth v. Perry*, 570 U.S. 693, 694 (2013) (except in limited circumstances, a litigant may not assert the legal rights or interests of others); *see also C.W.B., Jr. v. A.S.*, 2018 CO 8, ¶ 38 (statute granting foster parents right to intervene and participate fully in dependency or neglect proceedings does not confer standing to appeal juvenile court's judgment denying motion to terminate parental rights).

¶ 15 The juvenile court denied mother's motion to remove the GAL. The court reasoned that a respondent parent's GAL, like a child's GAL, has a duty to represent what the GAL believes to be in the parent's best interests — even over the objection of the parent and the parent's counsel.

¶ 16 But the GAL improperly participated in the proceeding when she purported to represent mother's best interests in court hearings and pleadings standing apart from mother and mother's counsel. And by advocating for a reduction of parenting time and supporting a concurrent permanency goal of adoption, the GAL undermined mother's constitutional interest in preventing the irretrievable

destruction of the parent-child relationship.  *See M.M.*, 726 P.2d at 1122 n.9.  The GAL asserted that visitation was stressful for mother and the baby, mother was exhausted after visits, and mother had not learned to read the baby's cues.  But these concerns did not establish that it was in mother's best interests to reduce her opportunity to develop her parenting skills or to plan for permanently severing her contact with the child.  And they did not outweigh mother's fundamental liberty interest in the care, custody, and management of her child.  *See Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982).  Thus, the juvenile court erred when it concluded that the GAL's advocacy served mother's best interests.

¶ 17    Citing *M.M.*, the juvenile court also noted that courts must appoint GALs for parents in cases where "the parent is mentally impaired so as to be incapable of understanding the nature and significance of the proceeding or incapable of making those critical decisions that are the parent's right to make."  726 P.2d at 1120. But the court made no findings to support the appointment of a GAL for mother on this basis, and we find no such support in the record.  To the contrary, mother's counsel advised the court that

mother understood the proceedings and could work effectively with counsel.

¶ 18    We conclude that the juvenile court abused its discretion when it denied mother's motion to dismiss her GAL.

### 3.    The Juvenile Court Erred When It Allowed Mother's GAL to Give Closing Argument and Improper Testimony

¶ 19    Over mother's objection, mother's GAL gave a closing argument at the termination hearing in which the GAL urged the juvenile court to terminate mother's parental rights.[1]  We agree with mother that the court erred in permitting this argument for three reasons.

¶ 20    First, a parent's GAL has no right to participate as a party in a dependency or neglect proceeding.  *See* § 19-1-111.  So, the GAL had no right to present closing argument.

---

[1] During the termination hearing, mother's GAL also testified in opposition to mother's motion to continue the proceeding because mother had not been properly accommodated under the Americans with Disabilities Act.  Specifically, mother's GAL testified, "All of the accommodations that were necessary have been put into place.  I don't think there's anything else that could have been done."

11

¶ 21    Second, the GAL's closing argument included improper testimony. When a GAL makes recommendations "based on an independent investigation, the facts of which have not otherwise been introduced into evidence, the guardian functions as a witness in the proceedings and, thus, should be subject to examination and cross-examination as to the bases of his or her opinion and recommendation." *People in Interest of J.E.B.*, 854 P.2d 1372, 1375 (Colo. App. 1993) (discussing children's GALs, who may choose to present recommendations either through closing argument or through testimony).

¶ 22    The GAL described her observations of mother and the facts underlying her recommendations. She told the juvenile court that mother had refused to engage in necessary services. The GAL said that mother had tried very hard, but mother's disabilities made it impossible for her to parent the child. This type of information could only be offered through the testimony of a witness because it was based on the GAL's personal observations and included facts that had not otherwise been introduced into evidence. *See id.* And by appointing a GAL to assist mother and then allowing the GAL to testify against her, the juvenile court violated mother's right to

12

fundamentally fair procedures in the termination proceeding. *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *People in Interest of D.C.C.*, 2018 COA 98, ¶ 21.

¶ 23     Third, it was improper for the GAL to advocate against mother's goal of protecting her fundamental liberty interest in the care, custody, and management of her child. *See Santosky*, 455 U.S. at 753. The termination of mother's parental rights over her objection was not in mother's best interests as a matter of law. Yet the GAL told the court that termination would be in mother's best interests. So, the juvenile court erred when it allowed the GAL to act against mother's goals in the proceeding. *See* CJD 04-05, § VIII(B).

¶ 24     Accordingly, we conclude that the juvenile court erred when it allowed mother's GAL to give closing argument and testify in opposition to mother's interests.

### 4.     The Juvenile Court's Errors Were Harmless

¶ 25     Mother urges us to apply the constitutional harmless error standard of reversal, under which we may disregard an error only if it is harmless beyond a reasonable doubt. An error is harmless if it does not affect a party's substantial rights. *See* C.A.R. 35(c).

¶ 26    Our supreme court has not addressed whether the constitutional harmless error standard applies with respect to a parent's constitutional rights in dependency or neglect proceedings. *See A.M. v. A.C.*, 2013 CO 16, ¶ 16 n.10. For purposes of this opinion, we will assume that it does. An error is harmless beyond a reasonable doubt if there is no reasonable possibility that the error prejudiced the appellant. *People v. Trujillo*, 114 P.3d 27, 32 (Colo. App. 2004).

¶ 27    Our review of the record leads us to conclude that there is no reasonable possibility that the outcome of the proceeding would have been different if the juvenile court had dismissed mother's GAL or precluded the GAL from giving closing argument. We reach this conclusion for two reasons.

¶ 28    First, the juvenile court said that in considering the success of the treatment plan, it had "listened to argument by all parties, but [based] its ruling . . . only [on] the testimony that was provided during [the] hearing." Thus, we conclude that the court did not rely on the improper testimony by mother's GAL.

¶ 29    Second, ample evidence showed that mother remained unfit to parent the child despite intensive intervention over a long period of

14

time, and that her conduct or condition of unfitness was unlikely to change. This evidence included testimony by a psychologist and mother's visitation therapist.

¶ 30 The psychologist, who performed a cognitive evaluation of mother, testified at the termination hearing that mother's cognitive functioning was in the extremely low range — below ninety-nine percent of people her age. He said this meant she would have difficulty learning, grasping concepts, and understanding communications. He recommended intensive support services, including hands-on parenting skill development such as that provided by a therapist.

¶ 31 Mother's visitation therapist testified that she had provided intensive, hands-on parenting skills training for mother during visitation. The therapist said she had worked with mother at over sixty visits — for three to six hours per visit, twice a week, for nine months. She said she had tailored her teaching style to mother's learning style based on the psychologist's recommendations. She described accommodations that addressed mother's memory,

learning style, verbal skills, concrete learning, and scaffolding techniques.[2]

¶ 32    The therapist opined that it was not safe to leave mother alone with the child for more than five minutes, and even then only if the child was in a secure setting such as a crib or car seat where he could not fall.  She explained that mother would often freeze if she did not know how to respond; in one instance, mother froze when the child began to gag on his saliva, and the therapist had to intervene.  She testified that, despite mother's effort and desire, mother was unable to keep up with the child's growth and development.  She said mother's parenting skills had peaked, mother could not consistently meet the child's needs, and mother would need twenty-four-hour supervision to parent the child.

¶ 33    The juvenile court also made the following findings and conclusions, which are supported by testimony at the termination hearing:

---

[2] "Scaffolding" involves teaching parents new skills with young children, starting with lots of support and gradually withdrawing the support as the parent learns to do things on his or her own.

16

¶ 34     Mother had not made enough progress to be able to care for the child alone for any period of time without creating a grave risk of death or serious bodily injury to the child.

¶ 35     Mother's tendency to freeze was unpredictable and put the child at significant risk due to his young age.

¶ 36     Mother had not been able to maintain a support system that would allow her to care for the child.  She was no longer engaged with the people who wanted to protect her.

¶ 37     Despite complying with her treatment plan, mother had not internalized the services provided in such a way as to address the concerns that brought the case to the Department's attention.

¶ 38     Even with accommodations, mother's disability rendered her unable to meet the child's needs.

¶ 39     Mother was unfit, and her conduct or condition was unlikely to change within a reasonable time.

¶ 40     Under these circumstances, we conclude that the juvenile court's errors in denying mother's motion to dismiss the GAL and allowing the GAL to give closing argument and testimony that supported the termination of mother's parental rights were harmless beyond a reasonable doubt.

### B. Ineffective Assistance of Mother's First Attorney

¶ 41  Mother contends that her first attorney rendered ineffective assistance by requesting the appointment of the GAL and by allowing the GAL to advocate against mother's goal of reunification. Based on our conclusion that there is no reasonable possibility the GAL's conduct prejudiced mother, we need not address this contention. *See People in Interest of A.R.*, 2018 COA 176, ¶ 7 (parent must demonstrate prejudice to succeed on a claim of ineffective assistance of counsel) (*cert. granted* Mar. 4, 2019); *People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007) (same).

### C. Motions for Continuance

¶ 42  Mother contends that the juvenile court erred when it denied her motions to continue the termination hearing. We perceive no basis for reversal.

#### 1. Standard of Review and Legal Principles

¶ 43  We will uphold a juvenile court's ruling on a motion for continuance absent a showing of an abuse of discretion. *M.M.*, 726 P.2d at 1121; *People in Interest of T.E.M.*, 124 P.3d 905, 908 (Colo. App. 2005). A court abuses its discretion when its ruling is

manifestly arbitrary, unreasonable, or unfair. *People in Interest of A.N-B.*, 2019 COA 46, ¶ 9.

¶ 44    In ruling on a motion for continuance, a juvenile court "should balance the need for orderly and expeditious administration of justice against the facts underlying the motion, while considering the child's need for permanency." *T.E.M.*, 124 P.3d at 908; *see also M.M.*, 726 P.2d at 1121.

¶ 45    The child was an infant when the Department filed the petition, so the juvenile court could not delay or continue the termination hearing absent good cause and a finding that the delay would serve the best interests of the child. §§ 19-3-104, 19-3-508(3)(a), 19-3-602(1), C.R.S. 2018; *see also* § 19-1-123, C.R.S. 2018 (expedited permanency procedures for children under six years old).

### 2.    Witnesses

¶ 46    Mother contends that the juvenile court erred when it denied her motion to continue the termination hearing to allow her to secure the attendance of all her witnesses. We disagree.

¶ 47    The termination hearing was originally scheduled for two days, but it took three days. The morning of the third day, mother's

attorney moved for a continuance. Mother's attorney reported that three of mother's witnesses were unavailable to testify that day because she had not been able to notify them of the additional hearing date. Mother's attorney did not explain how a delay would serve the child's best interests.

¶ 48 The juvenile court denied the motion. The court noted that the termination hearing was already in its third day and that the witnesses could have been taken out of order to accommodate their schedules. The court found that the lack of availability of witnesses did not establish good cause to continue the hearing.

¶ 49 The juvenile court's ruling reflects that it considered the reasons for mother's motion and the need to conclude the termination hearing in a timely manner. The record supports the juvenile court's finding that mother did not establish good cause for granting a delay. And mother provided no basis to find that a delay would serve the child's best interests. *See* § 19-3-104; § 19-3-602(1).

¶ 50 Therefore, we conclude that the juvenile court did not abuse its discretion when it denied mother's motion to continue the

termination hearing to allow her to secure the attendance of her remaining witnesses.

¶ 51    To the extent mother contends that the juvenile court erred when it did not conduct an analysis on the record that balanced the court's administrative needs and the child's need for permanency against mother's reasons for requesting the continuance, we disagree.  We are aware of no authority that requires courts to make such specific findings on the record.

### 3.    Additional Time

¶ 52    Mother contends that the juvenile court erred when it denied her motion to continue the termination hearing so that she could (1) have more time to work on her treatment plan and (2) investigate less drastic alternatives to termination of her parental rights. Again, we disagree.

¶ 53    We cannot conclude that the juvenile court erred when it did not give her more time to work on her treatment plan.  Mother's therapist testified that mother's parenting skills had peaked and she remained unfit to parent the child independently for even brief periods after nine months of intensive intervention.

¶ 54     Mother identified two possible alternatives to termination of her parental rights that she wanted to explore.  One was joint placement for herself and the child in a host home through Rocky Mountain Health Services.  Mother said she had recently accepted a referral for services and her eligibility was under review.  But testimony at the termination hearing established that mother had refused to accept a referral for this service during most of the dependency or neglect proceeding.  The delay in evaluating this option was due to mother's conduct.

¶ 55     Mother also wanted time for the Department to evaluate her housemate as a kin provider.  But the record shows the Department did evaluate him.  Although the Department did not conduct an extensive investigation, it determined that the housemate had a criminal record and a child welfare record that disqualified him from being involved in the child's care.

¶ 56     Thus, the record shows that mother did not demonstrate good cause for a delay or that a delay would have served the child's best interests.  We therefore conclude that the juvenile court did not abuse its discretion when it denied mother's motion to continue the termination hearing to give her more time to comply with her

treatment plan and investigate less drastic alternatives to termination.

### D. Ineffective Assistance of Mother's Second Attorney

¶ 57   Mother contends that her second attorney rendered ineffective assistance by failing to secure the attendance of her witnesses on the third day of the termination hearing.  We perceive no basis for reversal.

¶ 58   To succeed on a claim of ineffective assistance of counsel, mother must establish that she was prejudiced by counsel's allegedly deficient performance.  *See A.R.,* ¶ 7; *C.H.,* 166 P.3d at 291.

¶ 59   Mother contends that counsel's alleged error prejudiced her because she was not able to present the following testimony:

¶ 60   The intake social worker would have testified about mother's disability, the disability accommodations provided by the Department at the time of intake, and the accommodations provided by the hospital where the child was born.  But mother does not specify what this testimony would have been or how it would have helped her case.

¶ 61    The service coordination supervisor from Rocky Mountain Human Services would have testified about the services the organization generally provides and the date mother became eligible for the services. But mother does not suggest that this testimony would have differed from that provided by other witnesses who addressed the same issues.

¶ 62    A disability services provider from Rocky Mountain Human Services would have testified about the timeline for application for their services and the lack of reasonable efforts by the Department. *See* §§ 19-1-103(89), 19-3-100.5, 19-3-604(2)(h), C.R.S. 2018 (state must make reasonable efforts to rehabilitate parents and reunite families following out-of-home placement of abused or neglected children). But mother does not describe how the witness's description of the timeline would have differed from other testimony or specify what efforts the witness would have said were lacking.

¶ 63    Most importantly, mother does not explain how this testimony would have affected the outcome of the case in light of her therapist's testimony that her parenting skills had peaked and she remained unable to parent the child without constant supervision after nine months of intensive intervention. Moreover, she does not

24

suggest that any of these witnesses would have refuted the therapist's testimony.

¶ 64 Therefore, we reject mother's contention that reversal is warranted because her second counsel rendered ineffective assistance.

### III. Conclusion

¶ 65 The judgment is affirmed.

JUDGE J. JONES and JUDGE LIPINSKY concur.