25CA0134 Peo in Interest of SRC 07-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0134
City and County of Denver Juvenile Court No. 22JV30600
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.R.C., a Child,

and Concerning R.A.C. and J.R.C.,

Appellants.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Harris and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

---

Katie McLoughlin, Acting City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Michael Kovaka, Office of Respondent Parents' Counsel, Littleton, Colorado, for Appellant R.A.C.

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant J.R.C.

¶ 1 In this dependency and neglect proceeding, J.R.C. (father) and R.A.C. (mother) appeal the judgment terminating their parent-child legal relationships with S.R.C. (the child). We affirm.

I. Background

¶ 2 The Denver Department of Human Services (the Department) received a referral that the newborn child had been exposed to fentanyl and that the parents had not been visiting her in the neonatal intensive care unit "very frequently." The Department then filed a petition in dependency or neglect.

¶ 3 Both mother and father entered into deferred adjudications, agreeing to (1) abstain from consuming nonprescribed, controlled substances; (2) maintain stable housing; (3) comply with any visitation or parenting time schedule; and (4) cooperate with the Department. Five months later, the juvenile court revoked the deferred adjudications and adjudicated the child dependent and neglected. The court then adopted treatment plans that mirrored the terms of the parents' deferred adjudications and added a mental health component for father.

¶ 4 The Department later moved to terminate the parents' legal relationships with the child. Twenty-six months after the petition

1

was filed, the juvenile court held a contested hearing and granted the termination motion.

## II.    Continuance

¶ 5    Father contends that the juvenile court abused its discretion by denying his request to continue the termination hearing.  We are not persuaded.

### A.    Applicable Law and Standard of Review

¶ 6    In ruling on a motion to continue, the juvenile court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion while considering the child's need for permanency.  *People in Interest of T.M.S.*, 2019 COA 136, ¶ 44.  When a child is under six years old when the petition in dependency and neglect is filed, the expedited permanency planning (EPP) provisions apply, and the juvenile court cannot delay or continue the termination hearing absent good cause and a finding that the delay would serve the best interests of the child.  §§ 19-3-104, 19-1-123, C.R.S. 2024.

¶ 7    We review the juvenile court's ruling on a motion to continue for an abuse of discretion.  *People in Interest of T.E.M.*, 124 P.3d 905, 908 (Colo. App. 2005).  A court abuses its discretion when its

2

ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

## B. Analysis

¶ 8     At the start of the termination hearing father's counsel joined mother's request for a continuance, seeking additional time to demonstrate his sobriety and engagement after his recent release from incarceration. In denying father's request, the juvenile court determined that there was no evidence that a continuance was in the child's best interests.

¶ 9     The record supports this finding. At the time of the termination hearing, the case had been open for twenty-six months, the child had been out of the home for the entire length of the case, and neither parent had seen the child in over eight months.

¶ 10     We perceive no abuse of discretion because the juvenile court properly weighed the reasons proffered for the continuance against the need for prompt resolution of the proceeding and the child's best interests. *See* § 19-3-104; *T.M.S.*, ¶ 44.

¶ 11     Furthermore, at the conclusion of the caseworker's testimony, the juvenile court continued the termination hearing for nearly one

month. The court did so, in part, to give father's counsel time to contemplate additional evidence considering father's recent change of circumstance. Therefore, even if the juvenile court had abused its discretion by initially denying father's request, any effect was mitigated by the subsequent continuance. *See Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) ("An error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'") (citation omitted).

## III.　Reasonable Efforts

¶ 12　Both parents contend that the juvenile court erred by finding that the Department made reasonable efforts, arguing that the Department failed to provide various services and resources. We disagree.

### A.　Applicable Law and Standard of Review

¶ 13　The juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct

4

or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024.

¶ 14    To determine whether a parent is unfit, the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent and reunify the family.  *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement.  § 19-1-103(114), C.R.S. 2024.

¶ 15    Appropriate services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services.  § 19-3-208(2)(b).  Other services — including transportation assistance, diagnostic and mental health services, and drug and

alcohol treatment services — must be provided if the government has sufficient funding. § 19-3-208(2)(d).

¶ 16    In assessing a department's efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d at 915, by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. But the parent is ultimately responsible for using those services to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 17    Whether a department satisfied its obligation to make reasonable efforts to rehabilitate a parent and reunify the family is a mixed question of law and fact. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination whether the Department satisfied its reasonable efforts obligation. *Id.*

### B.    Housing Assistance

¶ 18    Both mother and father assert that the Department failed to provide adequate housing support or services, which inhibited their ability to comply with their treatment plans.

¶ 19    The juvenile court concluded that the Department made reasonable efforts to rehabilitate the parents, including providing information about housing voucher lotteries and housing opportunities.  But, the court found, the efforts were unsuccessful through no fault of the Department.

¶ 20    The record supports the court's conclusions regarding the Department's efforts.  The ongoing caseworker testified that both she and a prior caseworker provided mother and father with "a lot of information via email with housing resources," as well as one or two Denver housing lotteries.  *See J.C.R.*, 259 P.3d at 1285 (holding that the juvenile court could reasonably conclude that a department met its reasonable efforts obligation "by providing [mother] with information that she could have used to find housing").  The caseworker also expressed that a lack of communication from the parents impeded her ability to assist them to overcome housing barriers.

¶ 21    Nevertheless, mother and father assert that, because no member of the Department had "specialized knowledge" related to housing resources, the Department did not have meaningful information to provide the "diligence and care" necessary to assist them.  But they do not point us to any law requiring a department to have specialized expertise in the resources being provided, and we are aware of none.  *See* § 19-3-208(2)(b)(III) (requiring departments to provide "[i]nformation and referral services to available public and private assistance resources" as part of reasonable efforts); *see also J.C.R.*, 259 P.3d at 1285.  Nor does either parent assert that, had the Department possessed this specialized knowledge, any additional resources would have been available or provided to them.

¶ 22    Finally, we are unpersuaded by father's argument that the Department failed to make reasonable efforts by not offering financial assistance.  Section 19-3-208(2)(d) requires the Department to provide specific services "based upon the state's capacity to increase federal funding or any other money appropriated" for those services.  § 19-3-208(2)(d).  Financial housing assistance is not one of the enumerated services.  Father

cites section 19-3-208(2)(d)(VIII) — related to the provision of financial services to prevent out-of-home placement — in support of his argument. But, when mother and father lost their housing, the child had already been in out-of-home placement for one year. And the caseworker testified that the Department was unable to provide financial housing assistance because the child was not in the care of the parents.

¶ 23    For these reasons, we discern no error in the juvenile court's determination that the Department made reasonable efforts to rehabilitate the parents.

### C.    Efforts During Father's Incarceration

¶ 24    Father also asserts that the Department failed to make reasonable efforts to assist him with substance abuse and mental health treatment while he was incarcerated.

¶ 25    Although the juvenile court did not make specific findings about the Department's efforts during father's incarceration, the court generally concluded that the Department made reasonable efforts to rehabilitate the parents.

¶ 26    The record supports this conclusion. Father was incarcerated twice during the case, for a total of approximately three months of

the twenty-six-month-long case. The caseworker testified that, before father's incarceration, he completed a substance abuse evaluation which recommended ongoing treatment. But father expressed an unwillingness to engage in the recommended treatment.

¶ 27 The caseworker also testified that she met with father during his first incarceration and discussed his mental health, sober living, and inpatient treatment. At that time, the caseworker explained, father had access to jail-based treatment services, so she placed a referral for community mental health treatment. But, following his release, father failed to communicate with the treatment provider. *See J.C.R.*, 259 P.3d at 1285.

¶ 28 During father's second incarceration, shortly before the termination hearing, the caseworker met with him again, and they discussed his efforts to reengage with the jail-based mental health provider. At that time, father informed the caseworker that he was on medication and believed it was helping his mental health.

¶ 29 Based on the foregoing, we discern no error in the juvenile court's determination that the Department made reasonable efforts to rehabilitate father.

## IV.    Fit Within a Reasonable Time

¶ 30    Father next contends that the juvenile court erred by finding that he could not become fit within a reasonable time.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 31    A parent must have a reasonable amount of time to work on a treatment plan before the juvenile court terminates his parental rights.  *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007).  What constitutes a reasonable time to comply with a treatment plan is necessarily fact specific and may vary from case to case.  *Id.*  But a reasonable time is not an indefinite time; it must be determined by considering the child's physical, mental, and emotional conditions and needs.  *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25.

¶ 32    In determining whether a parent's conduct or condition is likely to change and whether the parent can become fit within a reasonable time, the juvenile court may consider, among other things, whether any change occurred during the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition.  *K.D. v. People*, 139 P.3d 695, 700 (Colo. 2006).  When a child is under six

years old, as in this case, the juvenile court must also consider the EPP provisions, which require that the child be placed in a permanent home as expeditiously as possible.  §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *see also S.Z.S.*, ¶ 25.

¶ 33   Whether a juvenile court properly terminated parental rights is a mixed question of fact and law.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.  Thus, we review the court's factual findings for clear error but review de novo its legal conclusions based on those facts.  *Id.*

### B.   Analysis

¶ 34   The juvenile court considered whether father could become fit within a reasonable time but ultimately concluded that he could not.  The court found that "[t]here continue[d] to be concerns regarding sobriety and an ability to meet the minor child's basic needs," and father had "been involved with the Department and the [c]ourt for over [two] years and no progress ha[d] been made."

¶ 35   The record supports the court's findings.  At the beginning of the case, the Department alleged concerns about father's substance use.  But, at the time of termination, the caseworker testified that father's substance use was even more concerning.  The caseworker

also described the cyclical nature of the case where father would engage for a short time followed by months with no contact. The caseworker did not believe this would change if father had more time.

¶ 36 Furthermore, the caseworker testified that father did not have a relationship with the child and had not seen her in over a year. The caseworker expressed concern that having the child reengage with father could be detrimental to her development.

¶ 37 We acknowledge that the caseworker testified that father did not have any pending criminal cases and appeared to be sober and in a family home during the termination hearing. But father did not present any evidence that he had the ability to remain stable and sober long-term.

¶ 38 In determining that father could not become fit within a reasonable time, the juvenile court properly considered the lack of progress made during the case, the long-term nature of father's conduct, and the child's needs. And because the record supports the court's findings, we will not disturb them.

## V. Disposition

¶ 39 The judgment is affirmed.

JUDGE HARRIS and JUDGE SCHUTZ concur.