24CA1958 Peo in Interest of GSLB 04-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1958
City and County of Denver Juvenile Court No. 23JV30257
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of G.S.L.B., a Child,

and Concerning A.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

---

Katie McLoughlin, City Attorney, Amy J. Packer, Assistant City Attorney,
Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Joel M. Pratt, Office of Respondent Parents' Counsel, Colorado Springs,
Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, A.B. (mother) appeals the judgment terminating her parent-child legal relationship with G.S.L.B. (the child).  We affirm.

## I.    Background

¶ 2    The Denver Department of Human Services initiated this case shortly after the child's birth due to concerns about mother's substance abuse and mental health.  The child was soon placed into kinship care with a friend of mother's.  At the time, a separate dependency and neglect action was pending regarding one of mother's other children, who is not at issue in this appeal.  The juvenile court adjudicated the child dependent and neglected.

¶ 3    The court then adopted a treatment plan for mother.  The treatment plan required mother to (1) engage in family time; (2) address her substance use; (3) provide the child with a safe environment where her basic needs are met; (4) address her pending criminal cases and refrain from further criminal activity; and (5) address her mental health issues.

¶ 4    A year and a half after it filed the case and a year after mother's treatment plan was adopted, the Department moved to terminate mother's parental rights.  Following a hearing, the court

1

terminated the parent-child legal relationship between mother and the child.

¶ 5 Mother now appeals.

## II. Motion to Continue

¶ 6 Mother first contends that the juvenile court abused its discretion when it denied her motion to continue the termination hearing. We perceive no basis for reversal.

### A. Applicable Law and Standard of Review

¶ 7 The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2024. When ruling on a motion to continue a termination hearing, the juvenile court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11. Moreover, because the child was under the age of six when the petition was filed, the expedited permanency planning (EPP) provisions applied. *See* §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024. Under those provisions, the court couldn't delay or continue the termination hearing unless good cause was shown and the delay

was in the child's best interests. *See* §§ 19-3-508(3)(a), 19-3-602(1), C.R.S. 2024.

¶ 8    We review the juvenile court's ruling on a motion to continue for an abuse of discretion. *R.J.B.*, ¶ 13. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

## B.    Analysis

¶ 9    At the start of the termination hearing, mother's counsel requested a "brief" continuance. Counsel stated that mother had the opportunity to complete an intake with a treatment provider that day and thus sought a continuance so she could engage in treatment and reunify with the child "if at all possible." The Department and guardian ad litem objected, arguing that this was an EPP case and that it was not in the child's best interests to delay permanency. The court denied the continuance, reasoning, "I cannot find good cause to extend the EPP guidelines any further," but noted that mother was "welcome to present that evidence within the trial."

¶ 10    We disagree with mother that the court was required to make specific findings showing that it "explicitly engage[d] in the balancing test." *See People in Interest of T.M.S.*, 2019 COA 136, ¶ 51 (division noting it was "aware of no authority that requires courts to make such specific findings on the record"). Although brief, the court's ruling indicated that it could not find good cause to grant mother's request, yet such good cause was required to delay this EPP case that had already been open for eighteen months by the time of the hearing. *See* §§ 19-3-508(3)(a), 19-3-602(1). In addition, mother's request to continue made no showing that delaying the hearing would be in the child's best interests. *See* §§ 19-3-508(3)(a), 19-3-602(1).

¶ 11    Therefore, the court didn't abuse its discretion when it denied the motion to continue.

### III.    Reasonable Efforts

¶ 12    Mother next contends that the Department failed to make reasonable efforts to rehabilitate her and reunite her with the child. We disagree.

4

## A. Applicable Law and Standard of Review

¶ 13     The juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent hasn't reasonably complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 14     In determining whether a parent is unfit, the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family. *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2024; *see also S.N-V.*, 300 P.3d at 915. Services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 15     Under section 19-3-208, a department must provide screenings, assessments, and individual case plans for the

5

provision of services; home-based family and crisis counseling; information about and referral services to available public and private assistance resources; family time services; and placement services.  § 19-3-208(2)(b).  And if funding is available, section 19-3-208 requires a department to provide transportation to services; diagnostic and mental health services; and drug and alcohol treatment services.  § 19-3-208(2)(d).

¶ 16    In deciding whether a department has satisfied its reasonable efforts obligation, the juvenile court should consider whether the provided services were appropriate to support the parent's treatment plan.  *S.N-V.*, 300 P.3d at 915.  The parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan.  *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).  And the court may consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts.  *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 17    Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  We review the

court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation.  *Id.*

### B.    Analysis

¶ 18    The juvenile court concluded that the Department made reasonable efforts to rehabilitate mother.  As pertinent here, the court found that those services included efforts to engage mother and "provide opportunities to meet with providers and her support team to strategize how to overcome barriers."  And the court found that the Department made efforts to help mother repair her phone to increase communication, gave her bus passes, and met with her at least twenty times.

¶ 19    Relatedly, the court found that mother's "lack of consistent engagement in services that would address the child protection concerns" left the Department unable to effectuate the goal of rehabilitating her.

¶ 20    The record supports the court's findings.  The court heard testimony that:

- the Department connected mother to two dual diagnosis providers for substance abuse and mental health treatment, but mother was discharged from both;

- when mother reported that she wasn't in favor of talk therapy, the Department referred her to an alternative provider, but there was no indication that mother ever reached out to that provider;

- the Department provided bus passes;

- the Department provided gift cards for mother to get a phone and later attempted, without success, to obtain funding from community partners to repair the phone when mother reported the screen had broken;

- at the time of the termination hearing, the Department was unable to verify mother's sobriety or engagement in any mental health treatment; and

- mother didn't consistently attend supervised, therapeutic, or kinship-supervised family time.

¶ 21   On this record, we perceive no error in the court's conclusion that the Department's efforts were reasonable. *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35 (in determining

whether a department made active efforts (a higher standard than the reasonable efforts standard), a court should consider the totality of the circumstances and measure the services and resources provided holistically rather than in isolation); *People in Interest of E.D.*, 2025 COA 11, ¶¶ 11-12 (applying a similar analysis under the reasonable efforts standard, and explaining that a court may consider a parent's unwillingness to participate in treatment in its reasonable efforts determination).

¶ 22 We also reject mother's argument that the Department didn't make reasonable efforts because it didn't accommodate her disability as required under the Americans with Disabilities Act (ADA). *See People in Interest of S.K.*, 2019 COA 36, ¶ 34 (when a parent has a qualifying disability under the ADA, the Department must account for and, if possible, make reasonable accommodations for the parent's disability when providing rehabilitative services). Assuming without deciding that the ADA applied, mother doesn't identify what accommodations the Department should have provided to her. The caseworker testified that, in an effort to accommodate mother's mental health and other concerns, mother was afforded an appropriate amount of time to

process information, was permitted to take breaks to help her control her emotions during difficult meetings, and was given directions that were not overly wordy. Nonetheless, mother argues that the services provided to her weren't "tailored to her disability." But she doesn't articulate what her alleged disability is, how the services provided to her should've been tailored to that disability, or what was lacking from the services she was provided.

¶ 23 We also disagree with mother's assertion that the Department's efforts were deficient because it didn't provide domestic violence victim services. She alludes to the kinship provider's testimony that one of the family time sessions mother had missed, two months before the termination, was the result of injuries mother had sustained during a fight with her boyfriend. But domestic violence wasn't a focus of the case: it wasn't part of the basis for the petition and wasn't an objective in mother's treatment plan. *See People in Interest of K.B.*, 2016 COA 21, ¶ 11 (a treatment plan's purpose is to preserve the parent-child relationship by assisting the parent in overcoming the problems that required intervention into the family). Mother doesn't cite any part of the record where she indicated that she needed services

relating to domestic violence or that domestic violence concerns were affecting her ability to engage with her treatment plan. *See In re E.R.S.*, 2019 COA 40, ¶ 3 (declining to consider issues that weren't preserved by being raised in the juvenile court). And the record suggests only that mother missed a single parenting time visit due to the alleged abuse, out of several visits mother missed for various reasons. Nonetheless, the record suggests that the Department engaged with mother on the issue, as the termination report, which the court admitted at the hearing, indicated that the caseworker and mother discussed safety-related concerns following the incident with her boyfriend.

¶ 24 Lastly, we reject mother's arguments that the Department's efforts were deficient because it didn't provide her with transportation outside of bus passes or repair her phone screen by the time of the hearing. The Department's provision of bus passes complied with its statutory obligation. *See* § 19-3-208(2)(d)(I). And although mother contends that her "trauma history complicated her ability to use certain transit solutions," she doesn't identify what other options the Department should have (or could have) offered. Furthermore, even though providing a cell phone to a parent is not

a service required for reasonable efforts under the Children's Code, the Department submitted a funding request to community partners in an effort to help repair mother's broken phone screen. *See* § 19-3-208(2).

¶ 25　Because we perceive no error in the court's reasonable efforts determination, we decline to disturb it.　*See A.S.L.*, ¶ 8.

### IV.　Less Drastic Alternative

¶ 26　Finally, mother contends that the juvenile court erred by determining that no less drastic alternative to termination existed. In particular, she asserts that the record doesn't support that determination and suggests instead that an allocation of parental responsibilities (APR) to the kinship provider was a viable less drastic alternative.　We disagree.

### A.　Applicable Law and Standard of Review

¶ 27　Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives.　*People in Interest of L.M.*, 2018 COA 57M, ¶ 24. In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs.　§ 19-3-604(3); *see also L.M.*, ¶ 29.　As part of

that analysis, the court may consider the child's need for permanency, *L.M.*, ¶ 29, and whether the alternative placement option favors adoption rather than an APR, *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31.

¶ 28 For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. If a juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B. Analysis

¶ 29 The juvenile court determined that there was no less drastic alternative to termination and that termination was in the child's best interests. Specifically, the court found that it was in the child's best interests to have the permanency that adoption can provide for her, "particularly given her very young age and the evidence that this has been the only home [where] she has resided."

*See A.M.*, ¶ 32; *S.N-V.*, 300 P.3d at 920 ("Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption.").

¶ 30 The record supports the court's findings. The caseworker testified that the child was eighteen months old at the time of the termination hearing and that the kinship provider's home was the only home she had known. The kinship placement testified that she preferred adoption, as she wanted the child to have a permanent option. *See Z.M.*, ¶ 31. The caseworker opined that an APR would not be in the child's best interests due to the child's age, her comfort in the kinship placement's home, and her need for permanency.

¶ 31 Because the record supports the court's findings, we must affirm its determination. *See B.H.*, ¶ 81.

## V.    Disposition

¶ 32 The judgment is affirmed.

JUDGE FOX and JUDGE LUM concur.