24CA1876 Peo in Interest of SW 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1876
El Paso County District Court No. 21JV756
Honorable Robin Chittum, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.W., a Child,

and Concerning T.P. and L.L.W., JR.,

Appellants.

---

JUDGMENT AFFRIMED

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Kenneth R. Hodges, County Attorney, Amy C. Fitch, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant T.P.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant L.L.W., JR.

¶ 1     T.P. (mother) and L.L.W., JR. (father) appeal the judgment terminating their parent-child legal relationships with S.W. (the child).  We affirm.

## I.     Background

¶ 2     In October 2021, the El Paso County Department of Human Services received a report that mother had given birth to a child while incarcerated and that the child was experiencing withdrawal symptoms resulting from mother's prenatal substance use.  Based on this information, the Department filed a petition in dependency or neglect.  Mother admitted to the petition, the juvenile court adjudicated the child dependent or neglected, and the court adopted a treatment plan for mother.

¶ 3     In January 2022, the Department amended its petition, naming father as a respondent parent.  The Department personally served father while he was in court in a dependency or neglect case for the child's older sibling.  Father didn't appear for this case, so the juvenile court adjudicated the child dependent or neglected by default judgment.  The court also determined that no appropriate treatment plan could be devised for father because he had abandoned the child.  *See* § 19-3-508(1)(e)(I), C.R.S. 2024.

1

¶ 4       In August 2022, the Department moved to terminate the parents' parental rights.  The juvenile court held a termination hearing in May 2023.  After hearing the evidence, the court found that, following mother's release from prison in February 2023, she had made significant progress on her own, despite the Department's lack of reasonable efforts.  The court therefore denied the Department's motion and ordered the Department to develop a more comprehensive treatment plan for mother.

¶ 5       Shortly thereafter, the juvenile court adopted an amended treatment plan that required mother to (1) cooperate with the Department and the professionals; (2) attend family time; (3) address her substance abuse issues; (4) complete a domestic violence evaluation and comply with recommendations; (5) participate in a psychological evaluation; (6) demonstrate self-sufficiency; and (7) engage in family preservation and life skills training.

¶ 6       In March 2024, the Department again moved to terminate the parents' parental rights.  One month before the scheduled termination hearing, father appeared in court for the first time.  The matter proceeded to a hearing in August 2024.  After hearing the

2

evidence, the juvenile court terminated father's parental rights under section 19-3-604(1)(a), C.R.S. 2024, and terminated mother's parental rights under section 19-3-604(1)(c).

## II.     Continuance

¶ 7     Father argues that the juvenile court abused its discretion by denying his continuance motion.  We disagree.

### A.     Applicable Law and Standard of Review

¶ 8     The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2024.  Thus, when ruling on a motion to continue, the juvenile court "should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency." *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.  In expedited permanency planning cases, such as this one, a court cannot grant a continuance unless the moving party establishes (1) good cause for the continuance and (2) that the continuance will serve the child's best interests.  § 19-3-104, C.R.S. 2024.

¶ 9     We review the denial of a continuance motion for an abuse of discretion.  *See C.S. v. People in Interest of I.S.*, 83 P.3d 627, 638

(Colo. 2004). Under this standard, we will not disturb the juvenile court's decision absent a showing that it was manifestly arbitrary, unreasonable, or unfair or was based on a misunderstanding or misapplication of law. *People in Interest of M.B.*, 2020 COA 13, ¶ 41; *People in Interest of T.M.S.*, 2019 COA 136, ¶ 10.

### B. Relevant Facts and Analysis

¶ 10 As noted, father first appeared in this case one month before the second termination hearing. The juvenile court appointed counsel for father and set a review hearing for two weeks later. At the review hearing, father's appointed counsel appeared and stated that it would be difficult for her to prepare for a termination hearing in two weeks because she needed to "look into an expert," "get the case file reviewed," and "get the certificates of completion [for] different services" that father had completed.

¶ 11 The juvenile court construed counsel's statement as a request for a continuance but denied the request on the basis that further delay would not be in the child's best interests. In doing so, the court noted that (1) the case had been open for almost three years; (2) the child had been out of the home for his entire life; (3) father knew about the case but decided to participate only at the last

4

minute; and (4) father had already had extra time to participate in the case, considering that the court could've terminated his parental rights following the first termination hearing.

¶ 12 Still, the juvenile court recognized that the short timeframe put counsel in a difficult spot and, as a result, the court agreed to accommodate her as much as possible. For example, the court ordered the Department to provide discovery within seven days or as soon as possible. The court also made counsel's exhibit list, witness list, and any expert endorsements due just before the hearing.

¶ 13 The record shows that counsel was able to prepare a case and defend father's rights at the termination hearing, despite the short amount of time she had to do so. Notably, within ten days of the review hearing, counsel filed a motion to set aside the default adjudication, arguing that the Department hadn't properly served father and therefore the adjudication was void. Counsel then made an extensive oral argument on her motion at the outset of the termination hearing. (That motion was denied and is not at issue in this appeal.) Then, during the hearing, counsel cross-examined witnesses, challenged the qualifications of the Department's

experts, and made a closing argument. Counsel also indicated that she had received discovery and had had the opportunity to review it before the termination hearing.

¶ 14      On appeal, father asserts two reasons why he had good cause for a continuance and a continuance was in the child's best interests. *See* § 19-3-104. First, he contends that a continuance would've allowed him time to engage in services. But, as discussed in more detail below, because father didn't have a treatment plan, the Department didn't have to provide him any services, nor was he entitled to a reasonable time to engage in services. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶¶ 34, 37. Second, father maintains that he needed a continuance so counsel could "present a complete defense." But, as recounted above, the juvenile court made accommodations for counsel to help her prepare for the termination hearing, and nothing in the record suggests that counsel was unprepared at the hearing. Indeed, father doesn't point to anything specific that he claims his counsel could've done or any specific evidence his counsel could've presented if she'd had more time to prepare for the hearing.

¶ 15    We therefore perceive no abuse of discretion in the juvenile

court's denial of father's motion for a continuance because the

court properly weighed the need for orderly and expeditious

administration of justice against the facts underlying the motion

and the child's need for permanency.  *See C.S.*, 83 P.3d at 638;

*R.J.B.*, ¶ 11.

### III.    Reasonable Efforts

¶ 16    The parents both assert that the juvenile court erred by

finding that the Department made reasonable efforts to rehabilitate

them and reunify them with the child.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 17    Section 19-3-604 sets forth three separate grounds for

terminating parental rights.  *People in Interest of L.M.*, 2018 COA

57M, ¶ 19.  Two of those grounds, subsections (1)(a) and (1)(c), are

pertinent to this appeal.

¶ 18    First, a juvenile court may terminate parental rights when the

parent has abandoned the child by (1) surrendering physical

custody of the child for six months or more and (2) showing no firm

intention to resume physical custody of the child or make

permanent legal arrangements for the child's care.  § 19-3-

604(1)(a)(I).  When a department seeks to terminate parental rights based on abandonment, a treatment plan isn't required.  *L.M.*, ¶ 19.  Thus, when a court terminates parental rights under subsection (1)(a), the court doesn't need to consider whether the department made reasonable efforts to rehabilitate the parent.  *S.Z.S.*, ¶ 37.

¶ 19    Second, a juvenile court may terminate parental rights if (1) the parent hasn't complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (2) the parent is unfit; and (3) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c).  Before the court may find a parent unfit under subsection (1)(c), the department must make reasonable efforts to rehabilitate the parent and reunite the family.  §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.

¶ 20    Reasonable efforts means the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).  Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  The services required under section 19-3-208 include, among other things, screenings, assessments, and individual case plans for the provision of services;

home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b).  Additionally, to the extent that funding is available, a department must provide drug and alcohol treatment services, as well as transportation to services when other appropriate transportation isn't available. § 19-3-208(2)(d)(I), (V).

¶ 21     The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  Because a parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 22    Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error, meaning that we will not disturb those findings unless they are so clearly erroneous as to find no support in the record. *Id.*; *see also People in Interest of A.A.*, 2020 COA 154, ¶ 7. However, we review de novo the court's legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *A.S.L.*, ¶ 8.

### B.    Father

¶ 23    Father asserts that the Department failed to make reasonable efforts when it didn't provide him with family time until shortly before the termination. But because the juvenile court terminated father's parental rights under section 19-3-604(1)(a), it didn't have to consider whether the Department made reasonable efforts before entering its termination order. *See S.Z.S.*, ¶ 37. And, notably, father doesn't contest the court's finding of abandonment under section 19-3-604(1)(a). We therefore reject father's assertion.

## C.    Mother

¶ 24    Mother argues that the Department failed to make reasonable efforts because it didn't provide her with family time, transportation to visits, substance abuse treatment and monitored sobriety, and housing resources.  We are not persuaded.

¶ 25    At the first termination hearing in May 2023, the juvenile court found that the Department had failed to make reasonable efforts for mother for two primary reasons: (1) it hadn't provided in-person visits and (2) it hadn't developed a more comprehensive treatment plan following mother's release from prison in February 2023.  Yet, at the second termination hearing, the court noted that, although "reasonable efforts was a big point at the termination hearing last year," the Department's efforts were "not an issue anymore."  Specifically, the court found that the Department had provided mother with the necessary services to complete the main components of her treatment plan — namely, family time, substance abuse, domestic violence, and life skills.  As set forth below, the record supports the court's findings.

¶ 26    First, the record shows that the Department provided mother with family time services from May 2023 until the termination

hearing. *See* § 19-3-208(2)(b)(IV). The caseworker testified that the Department had referred mother to four different family time service providers. For the most part, the Department arranged for three visits per week: two visits in Colorado Springs (where the child lived) and one visit at mother's home in Denver. However, the Department had to stop visits at mother's home because she continued to have contact with father in violation of the juvenile court's order. Even so, the Department continued to offer three visits per week for the rest of the case.

¶ 27     Second, the record also shows that the Department provided mother with transportation to her visits in Colorado Springs. *See* § 19-3-208(2)(d)(I). The caseworker explained that mother initially received rides to Colorado Springs from staff at her halfway house or through Medicaid transport. Then, staff from the visitation facility would pick her up at a bus stop in Colorado Springs and take her to the facility. Around February 2024, the caseworker learned that mother could no longer get rides to Colorado Springs, so the Department provided mother with tickets for the "Bustang," a regional bus service between Denver and Colorado Springs. As

before, a staff member from the provider met mother and transported her the rest of the way.

¶ 28　Third, the record indicates that the Department provided mother with resources for substance abuse, domestic violence, and life skills. *See* § 19-3-208(2)(b)(III), (d)(V). The caseworker referred mother to a provider for a substance abuse evaluation and random drug screens, but she never did the evaluation or submitted a screen. The Department also referred mother for a domestic violence evaluation, and although she completed an evaluation and did some treatment, her provider discharged her for lack of participation. Finally, the Department provided mother life skills through two different providers, but both providers discharged her for lack of participation.

¶ 29　Despite this record, mother submits, for the five reasons addressed below, that the Department failed to make reasonable efforts. We disagree as follows:

> 1. Mother's reliance on the Department's lack of efforts *before* May 2023 is unavailing because the issue in the second termination hearing was whether the Department

13

provided reasonable efforts *after* the first termination hearing.

2. Contrary to mother's assertion, the record doesn't show that she had to arrange her own drug screens, treatment, and housing because the Department failed to do so. Rather, the record shows that, for part of the case, mother had access to drug screens, treatment, and housing resources through parole. Therefore the Department didn't need to provide additional resources.

3. The record doesn't support mother's contention that she didn't have family time between May 2023 and September 2023. To be sure, the record shows that there were some issues with a family time supervisor during this period, but the Department arranged for mother to have a new supervisor.

4. Although the record indicates that mother may have missed some visits because her bus was stuck in traffic or behind schedule, we are not convinced the Department's efforts were lacking. The family time supervisor testified that mother could've taken an earlier

14

bus to ensure that she made it on time. And the Department offered mother make-up visits for transportation-related absences.

5. Nor are we convinced that the Department failed to provide transportation services during the time mother was receiving rides from staff at her halfway house or through Medicaid because section 19-3-208(2)(d)(I) requires only that the Department provide a parent with transportation to services "when other appropriate transportation is not available."

¶ 30 In sum, because the record shows that the Department provided mother with the necessary resources to comply with her treatment plan, the juvenile court didn't err in finding that the Department made reasonable efforts. *See S.N-V.*, 300 P.3d at 915.

## IV. Disposition

¶ 31 The judgment is affirmed.

JUDGE FOX and JUDGE LUM concur.