24CA1010 Peo In Interest of EG 04-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1010
Weld County District Court No. 19JV913
Honorable W. Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.G., a Child,

and Concerning Jen.G. and Jes.G.,

Appellants.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant Jen.G.

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant Jes.G.

¶ 1    Jes.G. (father) and Jen.G. (mother) appeal the judgment terminating their parent-child legal relationships with E.G. (the child).  We affirm.

## I.    Background

¶ 2    In December 2019, the Weld County Department of Human Services received a report of domestic violence between mother and father in the child's presence.  Based on this information, as well as concerns about the parents' substance abuse, the Department filed a petition in dependency or neglect.

¶ 3    The parents agreed to deferred adjudications under section 19-3-505(5), C.R.S. 2024, and the juvenile court adopted treatment plans for them.  A year later, the juvenile court revoked the deferred adjudications and formally adjudicated the child dependent or neglected.

¶ 4    The Department then moved to terminate the parents' parental rights.  After an evidentiary hearing in December 2021, the court denied the Department's motion, finding that (1) the Department had failed to provide father with reasonable efforts and (2) termination of mother's parental rights was not in the child's best interests.

¶ 5     Almost two years later, the Department again moved to terminate the parents' parental rights.  The juvenile court held another termination hearing in March 2024, and at the end of this hearing, the court granted the motion and terminated the parents' parental rights under section 19-3-604(1)(c), C.R.S. 2024.

## II.     Continuance and Ineffective Assistance of Counsel

¶ 6     Father argues that the juvenile court abused its discretion by denying his continuance motion.  He also asserts that his attorney provided ineffective assistance.[1]  We disagree.

### A.     Applicable Law and Standard of Review

¶ 7     The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child."  § 19-1-102(1)(c), C.R.S. 2024.  Thus, when ruling on a motion to continue, the juvenile court "should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency."  *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.  In expedited permanency planning cases, such as this one, a court

---

[1] The Department's and guardian ad litem's answer briefs do not address father's assertion that his counsel was ineffective.

cannot grant a continuance unless the moving party establishes (1) good cause for the continuance and (2) that the continuance will serve the child's best interests. § 19-3-104, C.R.S. 2024.

¶ 8 We review the denial of a continuance motion for an abuse of discretion. *See C.S. v. People in Interest of I.S.*, 83 P.3d 627, 638 (Colo. 2004). Under this standard, we will not disturb the juvenile court's decision absent a showing that it was manifestly arbitrary, unreasonable, or unfair, or was based on a misunderstanding or misapplication of law. *People in Interest of M.B.*, 2020 COA 13, ¶ 41; *People in Interest of T.M.S.*, 2019 COA 136, ¶ 10.

¶ 9 To prevail on an ineffective assistance claim, the parent must establish that (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the parent was prejudiced by counsel's deficient performance — that is, there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *See A.R. v. D.R.*, 2020 CO 10, ¶¶ 48, 60. "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

B.    Relevant Facts and Analysis

¶ 10    As pertinent to this appeal, father initially provided two reasons for seeking a continuance.  First, he asserted that his counsel did not have adequate time to review "all relevant information related to this case."  Second, father maintained that his investigator had not obtained information about visits that occurred while he was in the Department of Corrections (DOC).

¶ 11    On the first day of the termination hearing, father's counsel updated the juvenile court on these issues, stating that she still needed to review a "couple hundred pages worth of information" and interview father's DOC case manager.  The court declined to continue the hearing, noting that

- counsel would have sufficient time to review the additional information before the end of the three-day trial; and

- if counsel obtained new information through the investigator, it would add another day to the hearing.

¶ 12    Father renewed his request for a continuance before his case-in-chief on day two of the hearing.  This time, father's counsel said nothing about the "couple hundred pages of information" but

continued to claim that the investigator was still trying to contact the DOC case manager. As an offer of proof, counsel said that she thought that father may have missed some visits because "the child was not made available." In denying the request, the court determined that counsel could have obtained this information from the Department or from father.

¶ 13 On the hearing's final day, father did not renew his motion to continue, nor did he mention any further issues with discovery or problems contacting the DOC case manager. Likewise, he did not ask to reopen the evidence to recall witnesses or call new witnesses — such as the DOC case manager or his investigator. Nor did father request another day to present more evidence.

¶ 14 Based on this record, we perceive no abuse of discretion in the juvenile court's ruling because the court properly weighed the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency. *See C.S.*, 83 P.3d at 638; *R.J.B.*, ¶ 11. Considering that the case had been pending for over four years, which was most of the child's life, father did not establish that a continuance was in the child's best interests. *See* § 19-3-104. Likewise, father did not establish

5

good cause for a continuance because (1) counsel had adequate time to review all the discovery by the end of trial and (2) counsel could have gotten information about father's missed visits from other sources. *See id.*

¶ 15 We also reject father's contention that his counsel provided ineffective assistance. Given that the termination hearing was a multi-day hearing, counsel had the opportunity to review all the discovery and contact all relevant witnesses before the hearing concluded. Notably, counsel on the final day of the hearing, did not renew her request for a continuance or mention further issues with discovery or contacting the DOC case manager. Therefore, father has not established that his attorney provided deficient performance. *See C.B.,* ¶ 26.

### III. Reasonable Efforts

¶ 16 The parents assert that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate them and reunify them with the child. We disagree.

### A. Applicable Law and Standard of Review

¶ 17 Before a juvenile court may find a parent unfit under section 19-3-604(1)(c), the department must make reasonable efforts to

rehabilitate the parent and reunify the family. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care" to reunify parents with their children, and services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114). As relevant here, section 19-3-208 requires the department to provide (1) information and referral services to available public and private assistance resources and (2) family time services. § 19-3-208(2)(b)(III)-(IV).

¶ 18    Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error and review de novo its legal determination based on those findings. *Id.*

### B.    Analysis

¶ 19    The parents had similar treatment plans requiring, among other things, that they address substance abuse, parenting skills, and domestic violence. Because of father's incarceration, the services available to each parent differed greatly. For example, the Department referred mother to multiple treatment programs,

7

in-person family time, parenting education, and a domestic violence impact class. As for father, the Department made referrals while father was in the community, but he did not participate. The caseworker met with father in person during his incarceration and arranged family time for him. The record otherwise indicates that father had access to several programs in the DOC.

¶ 20     Father asserts that, although the Department provided him with family time, it did not furnish him with any other services during his incarceration. To be sure, although there were limited services available to father in prison, the record shows that he engaged in the ones that he could. But nothing in the record suggests that the Department could have provided him additional services. In other words, the Department provided information and referral services to *available* public and private assistance as required by section 19-3-208(2)(b)(III). We therefore discern no error.

¶ 21     Mother argues that the Department did not (1) expand or liberalize her family time; (2) provide her with parent-child interactional therapy (PCIT); or (3) facilitate visits between the child and his older siblings. We disagree with the first contention

because the record shows that mother was not ready for expanded family time due to her lack of progress with her plan and the anxiety the child felt. *See People in Interest of A.A.*, 2020 COA 154, ¶ 17 (the department must provide family time services "in accordance with individual case plans"). As to the second, the Department referred mother to PCIT, but the provider determined that PCIT was not appropriate for her due to concerns with her sobriety. *Cf. People in Interest of E.D.*, 2025 COA 11, ¶ 40 (a department can satisfy reasonable efforts by simply "making available" therapeutic family time services). Finally, mother does not explain how sibling visits would have rehabilitated her or reunified her with the child.

¶ 22    In sum, the record shows that the Department provided the necessary services to support the parents' treatment plans, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), but the parents either did not utilize those services or position themselves to be able to use those services to become fit parents, *see People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). We therefore discern no error in the juvenile court's determination that the Department made reasonable efforts. *See E.D.*, ¶ 11 (whether

9

the department made reasonable efforts must be measured holistically rather than in isolation with respect to each treatment plan objective).

### IV. Less Drastic Alternative

¶ 23  The parents contend that the juvenile court erred by rejecting a less drastic alternative to termination. We disagree.

#### A. Applicable Law and Standard of Review

¶ 24  Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). When considering less drastic alternatives, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3). An allocation of parental responsibilities (APR) to a relative is not a less drastic alternative if it does not provide adequate permanence and stability for the child. *People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005).

¶ 25  A viable less drastic alternative must do more than adequately meet a child's needs; rather, it must be in the child's best interests. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. If the juvenile

court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. Under those circumstances, we must affirm the court's decision if the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 81.

## B. Analysis

¶ 26 The juvenile court found that there was no less drastic alternative to termination. It determined that an APR was not in the child's best interests because she had "suffered so many disruptions throughout this case with the numerous placements." The court found that the child needed "a permanent and forever home" to allow her to "heal from all the trauma" of the "failed placements." Thus, it concluded that "only termination and adoption [could] provide the necessary stability for the [c]hild in overcoming these emotional obstacles."

¶ 27 The record supports the juvenile court's findings. The caseworker testified that the child had been in eight different placements during the case but now resided in a permanent home with a foster family. She opined that, based on the case's history, the child needed "stability and consistency," which could only be

achieved through termination and adoption. The caseworker said that the child could not get this stability through an APR because of potential "disruptions" going forward.

¶ 28    Father asserts that the juvenile court erred by eliminating an APR to paternal great-grandmother as a less drastic alternative to termination. Specifically, he asserts that, when the court declined placement with paternal great-grandmother almost a year before the termination hearing, it relied on the child's attachment to the foster parents, which the current version of the placement statute does not allow. *See* § 19-3-702(6)(h), C.R.S. 2024 (placement with a child's relative "should not be denied based solely upon the ordinary bonding and attachment to a foster parent"). Father maintains that, because the court reiterated this finding at the termination hearing, it improperly eliminated an APR to paternal great-grandmother as a less drastic alternative.

¶ 29    Mother contends that the juvenile court erred by declining an APR to the child's sibling's father and his wife as a less drastic alternative. In support, she asserts, among other things, that the child had a bond with mother and her sibling, and an APR to the sibling's father and his wife was therefore in the child's best

interests. *See, e.g.*, *People in Interest of D.P.*, 181 P.3d 403, 408-09 (Colo. App. 2008) (allowing a court to consider whether the parent and child have a bond); § 19-3-507(1)(b), C.R.S. 2024 (creating a rebuttable presumption that sibling groups be placed together).

¶ 30 We reject both parents' arguments for the same reason. The court found that an APR was not in the child's best interests because she needed the permanency that only termination and adoption could provide. *See T.E.M.*, 124 P.3d at 910-11. As a result, the court did not deny an APR based "solely" on the child's bonding and attachment to the foster parents. § 19-3-702(6)(h). And even if the court had placed the child with someone else, its findings reflect that it would have still rejected an APR. In other words, an APR, regardless of the placement, was not a less drastic alternative to termination.

## V.    Disposition

¶ 31 The judgment is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.